285 S.W.3d 561 (2009)
Debra J. MEEHL, Mark Meehl, Individually and as Officers and Agents of the Maureen J. Meehl Bipolar/BPD Foundation, Inc., and the Maureen J. Meehl Bipolar/BPD Foundation, Inc., an Arizona Not For Profit Corporation a/k/a the "Meehl Foundation", Appellants,
v.
Alfred M. WISE, Jr., Katherine D. Wise, John P. Hundl, Donna G. Hundl, Wilmer Conner, Margie Ann Alexander, John T. Horn, Martha G. Horn, John T. Horn, Jr., Christopher Blake Broadway, Paula Lee Broadway, James Zimmer, Mildred Zimmer, Robert Galiley, Patricia Galiley, Billy G. Phillips, Bonnie Kay Phillips, Frank Hlavinka, Barbara Hlavinka, Homero Cardenas, Janie Cardenas, Billie A. Pirtle, Richard Allen, Joyce Allen, George E. Hurst, Thelma Hurst, Gary Fruidenberg, A.J. Lowery, Jr., Ronald Korczynski, Kathy Korczynski, Matthew Mouton, and Annette Mouton, Appellees.
No. 14-07-00592-CV.
Court of Appeals of Texas, Houston (14th Dist.).
April 7, 2009.
*563 Sarah Regina Guidry, Houston, Garth A. Corbett, Austin, for appellants.
Keith Vaughan, Houston, for appellees.
Panel consists of Chief Justice HEDGES and Justices GUZMAN and BROWN.

MAJORITY OPINION
ADELE HEDGES, Chief Justice.
In this case, we are asked to determine whether the trial court erred in enforcing *564 a 1965 deed restriction to prevent homeowners from allowing a nonprofit corporation to operate a community home for persons with bipolar disorder in the homeowners' residence. We hold that the actual or attempted enforcement of the deed restriction neither violates the federal Fair Housing Act nor the Community Homes for Disabled Persons Location Act. We therefore dissolve the trial court's order enjoining such operations, reverse the trial court's judgment, and remand the case for further proceedings consistent with this opinion.

I. FACTUAL AND PROCEDURAL BACKGROUND
The parties own property in the Carleton Acres Subdivision in Brazoria County, Texas. With the exception of two lots that are not at issue in this case, the deeds to the properties in the subdivision incorporate a Declaration of Restrictions executed in 1965 and renewed in ten-year increments thereafter. The Declaration of Restrictions provides that "no tract, lot, parcel or building site in said subdivision shall be used for any purpose other than that of a single family residence...."
In January 2006, Mark and Deborah Meehl purchased two adjoining lots in the subdivision conveyed by warranty deed expressly subject to the Declaration of Restrictions. The Meehls immediately began constructing a 3800-square-foot structure. According to a newspaper article published in The Facts on January 21, 2006, the Meehls planned to operate the facility as a "retreat, resource and educational center" for persons with bipolar disorder, and would be operated "in a bed-and-breakfast style with four luxury guest suites...." Nearly all of the Meehls' neighbors opposed the operation of the facility in the subdivision. On March 23, 2006, appellees ("the Neighbors") filed a petition for a temporary restraining order and injunction prohibiting its further construction or promotion. As defendants in the suit, the Neighbors named the Maureen J. Meehl Bipolar/BPD Foundation, Inc. ("the Foundation") and the Meehls, individually and as officers of the Foundation. The trial court temporarily enjoined the Meehls and the Foundation from continuing construction, promotion, or advertisement of the facility. On July 6, the Meehls, individually and as officers of the Foundation, filed a counterclaim for declaratory judgment and a permanent injunction. The case was tried without a jury on August 2, 2006. Final judgment in favor of the Neighbors, permanently enjoining the Meehls from constructing and operating a community home, was entered on November 5, 2007.

II. ISSUES PRESENTED
The Meehls and the Foundation present eleven issues on appeal. In their first and tenth issues, they contend that the trial court erred in denying their requests for declaratory relief and for a permanent injunction pursuant to the Texas Community Homes for Disabled Persons Location Act ("the Community Homes Act"). They assert in their second issue that the trial court erred in determining that the Community Homes Act does not apply in this case. In their third and fourth issues, they challenge the trial court's ruling enforcing the restrictive covenant and permanently enjoining them from operating a community home on the property. They argue in their fifth issue that the trial court erred in concluding that the Meehls are not a protected class within the meaning of the federal Fair Housing Act. In their sixth and seventh issues, they challenge the trial court's conclusion that the strict enforcement of the restrictive covenant would not constitute discrimination under the federal Fair Housing Act. Appellants contend in their eighth issue that the evidence is legally and factually insufficient to support a *565 finding that their operation of a community home would constitute a wrongful act, and thus, the trial court erred in enjoining their operation of a community home. In their ninth issue, appellants argue that the trial court's final judgment is so broad that it precludes them from engaging in lawful activities that are a proper exercise of their rights. In their eleventh and final issue, they argue that the trial court erroneously excluded evidence relevant to their defense against the Neighbors' claims.

III. STANDARDS OF REVIEW
We independently evaluate the trial court's conclusions of law and will uphold them if the trial court's judgment can be sustained on any theory supported by the evidence. See Marsh v. Marsh, 949 S.W.2d 734, 739 (Tex.App.-Houston [14th Dist.] 1997, no writ). The trial court's findings of fact, however, are not conclusive when there is a complete statement of facts in the record. Middleton v. Kawasaki Steel Corp., 687 S.W.2d 42, 44 (Tex. App.-Houston [14th Dist.] 1985), writ ref'd n.r.e., 699 S.W.2d 199 (Tex.1985) (per curiam). Nevertheless, unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986). We review challenged findings for legal and factual sufficiency of the evidence, applying the same standards we use when reviewing the evidence supporting a jury's answer. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). In reviewing the evidence for legal sufficiency, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.2005). We credit all favorable evidence that a reasonable factfinder could and disregard unfavorable evidence unless a reasonable factfinder could not. See id. at 827. If there is more than a mere scintilla of evidence supporting a finding of fact, we will overrule a legal sufficiency challenge. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex.1998). If no evidence supporting the judgment remains after this review, reversal is required as a matter of law.
In reviewing the factual sufficiency of the evidence, we consider all of the evidence and set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.1996). Inferences may support a judgment only if they are reasonable in light of all of the evidence. Id. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet, 61 S.W.3d 599, 615-16 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). In reviewing the sufficiency of the evidence, we may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex.1998).
We review a permanent injunction for clear abuse of discretion. Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n, 25 S.W.3d 845, 848 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). A movant seeking an injunction to enforce a restrictive covenant is "not required to show proof of irreparable injury." Id. at 849 (citing Munson v. Milton, 948 S.W.2d 813, 815 (Tex.App.-San Antonio 1997, pet. denied)). To enjoin the performance of an act that would breach a restrictive covenant, the movant is only required to prove that the respondent "intends *566 to do an act that would breach the restrictive covenant." Id. We review a trial court's interpretation of the law de novo. In re Dep't of Family & Protective Servs., 273 S.W.3d 637, 642 (Tex.2009). A trial court has no discretion in determining what the law is or properly applying the law. Id. If the trial court fails to properly interpret the law or applies the law incorrectly, it abuses its discretion. Id. at 642-43.

IV. ANALYSIS

A. The Property Code and Community Homes Act
We begin our analysis with chapter 202 of the Texas Property Code. Section 202.002, which pertains to enforcement of restrictive covenants, provides as follows:
(a) This chapter applies to all restrictive covenants regardless of the date on which they were created.
(b) This chapter does not affect the requirements of the Community Homes for Disabled Persons Location Act (Article 1011n, Vernon's Texas Civil Statutes).
TEX. PROP. CODE ANN. § 202.002 (Vernon 2007).
Section 202.003(b) further provides:
In this subsection, "family home" is a residential home that meets the definition of and requirements applicable to a family home under the Community Homes for Disabled Persons Location Act (Article 1011n, Vernon's Texas Civil Statutes). A dedicatory instrument or restrictive covenant may not be construed to prevent the use of property as a family home. However, any restrictive covenant that applies to property used as a family home shall be liberally construed to give effect to its purposes and intent except to the extent that the construction would restrict the use as a family home.
Id. § 202.003 (footnote omitted) (emphasis added).
We must compare these provisions with the Community Homes Act, which provides in relevant part:
(a) The use and operation of a community home that meets the qualifications imposed under this chapter is a use by right that is authorized in any district zoned as residential.
(b) A restriction, reservation, exception, or other provision in an instrument created or amended on or after September 1, 1985, that relates to the transfer, sale, lease, or use of property may not prohibit the use of the property as a community home.
TEX. HUM. RES. CODE ANN. § 123.003 (Vernon 2001).

B. Reconciliation of the Statutes
We now determine which statute controls the enforcement of the instant restrictive covenant: the Property Code provision providing for universal coverage or the Human Resources Code provision that controls only those covenants created or amended on or after September 1, 1985. See TEX. PROP. CODE ANN. §§ 202.001-.002; TEX. HUM. RES. CODE ANN. § 123.003. Chapter 202 of the Texas Property Code generally controls the enforcement of restrictive covenants. See TEX. PROP. CODE ANN. § 202.002(a). However, chapter 202 yields to the Community Homes Act. See id. § 202.002(b) ("This chapter does not affect the requirements of the Community Homes for Disabled Persons Location Act....").
The Community Homes Act limits the enforceability of public and private regulations preventing the use of property as a community home. See TEX. HUM. RES. CODE ANN. § 123.003. Section 123.003(a) *567 applies to city zoning regulations while section 123.003(b) applies to private regulations such as restrictive covenants. See id. § 123.003(a), (b). More specifically, section 123.003(a) allows property "zoned as residential" to be used as a community home. This right to use residentially-zoned property as a community home is a limitation on city zoning regulations and enforcement thereof. Because section 123.003(a) applies only to zoning regulations restricting the use of property as a community home and the Neighbors seek to enforce a private restrictive covenant, section 123.003(a) is not applicable to this case.
By contrast, section 123.003(b) limits the enforceability of private covenants. Looking forward at the time of its effective date, section 123.003(b) provides that as of September 1, 1985, private covenants restricting the use of property as a community home are not enforceable. The instant restrictive covenant, adopted in 1965, would appear to avoid the restrictions of section 123.003(b) absent contrary controlling authority such as section 202.003(b) of the Texas Property Code. We must therefore reconcile the conflicting language of these two statutes.
Section 202.003(b) of the Property Code provides that "[a] dedicatory instrument or restrictive covenant may not be construed to prevent the use of property as a family home."[1] TEX. PROP. CODE ANN. § 202.003(b). The tension between section 202.003(b) of the Texas Property Code and section 123.003(b) of the Human Resources Code is readily apparent with respect to enforceability of a restrictive covenant depending on the date in which the covenant was created. The Human Resources Code bars enforcement of a covenant restricting the use of property as a community home created after September 1, 1985, while the Property Code bars enforcement of the same covenant regardless of the date in which the instrument was created. Because section 202.003(b) is the later statute, enacted in 1987, its general prohibition controls the less restrictive section of 123.003(b) passed in 1985. We conclude that the universal applicability of the Property Code's section 202.003(b) controls if the use of property comports with definition of a community home articulated in the Human Resources Code. Applying section 202.003(b), we further conclude that the disputed restrictive covenant is enforceable to the extent that the Meehls *568 have met the qualifications further articulated under the Human Resources Code.[2]

C. Requirements of the Community Homes Act
We now consider whether the Meehls' use of their property meets the requirements of a community home under the Community Homes Act. These requirements are set forth in the Community Homes Act as follows:
To qualify as a community home, an entity must comply with Sections 123.005 through 123.008 [of the Texas Human Resource Code] and be:
(1) a community-based residential home operated by:
(A) the Texas Department of Mental Health and Mental Retardation;
(B) a community center organized under Subchapter A, Chapter 534, Health and Safety Code, that provides services to persons with disabilities;
(C) an entity subject to the Texas Non-Profit Corporation Act (Article 1396-1.01 et seq., Vernon's Texas Civil Statutes); or
(D) an entity certified by the Texas Department of Human Services as a provider under the medical assistance *569 program serving persons in intermediate care facilities for persons with mental retardation; or
(2) an assisted living facility licensed under Chapter 247, Health and Safety Code, provided that the exterior structure retains compatibility with the surrounding residential dwellings.
TEX. HUM. RES. CODE ANN. § 123.004. Although there is no evidence that Mark and Debra Meehl fulfill these requirements, it is undisputed that the Foundation is an entity subject to the Texas Non-Profit Corporation Act. Thus, the Foundation is eligible to operate a community home, provided that other statutory requirements are satisfied. These include the requirement that a community home provide food and shelter, personal guidance, care, habilitation services, and supervision. Id. § 123.005. The Meehls offered uncontroverted evidence that these services would be provided in the planned facility.[3] In addition, no more than six persons with disabilities and two supervisors may reside in a community home at the same time. Id. § 123.006. Again, the Meehls' testimony regarding their planned operations was not rebutted by any evidence that operation of a community home at the Meehls' property would violate this statute. Finally, the Meehls offered evidence, without contradiction, that there is no existing community home within a half-mile of the Meehls' property. Id. § 123.008 ("A community home may not be established within one-half mile of an existing community home.").
Rather than rebutting the Meehls' evidence, the Neighbors instead focused their arguments on section 123.007 of the Human Resources Code, which provides simply that "[a] community home must meet all applicable licensing requirements." Id. § 123.007. Although they argue that "Texas does not authorize or protect `unlicensed' community homes," neither at trial nor on appeal have they identified any unsatisfied licensing requirement applicable to the Foundation's operation of a community home. Indeed, in a letter brief to the trial court, the Neighbors asserted both that "it is obvious the legislature did not provide for unlicensed `community homes'" and "[i]t is obvious ... that no one knows what those applicable licensing requirements are." At oral argument, the Neighbors identified no applicable licensing requirements. Although they referred to language that they contend appears in "Chapter 254" of the Health and Safety Code, no such section exists. Appellees produced a document containing the language on which they rely and represented that the language had been enacted into law; in fact, the document produced is merely a copy of House Bill 1168 as introduced to the Texas Legislature in February 2007 by Representative Jose Menendez. A bill is not law; here, the provisions that would have added a chapter to the Health and Safety Code were deleted from the proposed legislation before its enactment.
Because the trial court failed to correctly identify and apply the controlling law, *570 its issuance of a permanent injunction constitutes an abuse of discretion. Contrary to the trial court's analysis, the deed restriction must yield to the Foundation's right to operate a community home in accordance with the Community Homes Act. We therefore sustain appellants' second, third, fourth, eighth, and ninth issues; dissolve the permanent injunction; and reverse the trial court's judgment.

D. Standing to Assert Fair Housing Act Claims
In their fifth issue, appellants ask "whether the court erred as a matter of law when it concluded that the Meehls were not [in] a protected class within the meaning of the Federal Fair Housing Act" ("the FHA"). Appellants presented uncontroverted evidence that Mark Meehl has a history of bipolar illness which prevents him from working; thus, he has a "handicap" as defined by the FHA. See 42 U.S.C.A. § 3602(h) (defining "handicap" to include a physical or mental impairment which substantially limits one or more of the person's major life activities, a record of having such an impairment, or being regarded as having such an impairment). We therefore sustain appellants' fifth issue as it pertains to Mark Meehl. Regarding Debra Meehl and the Foundation, however, appellants presented no evidence that they are handicapped as that term is used in the FHA, and appellants have identified no other protected class to which Debra Meehl and the Foundation allegedly belong. Thus, we overrule appellants' fifth issue as it applies to Debra Meehl and the Foundation.
The balance of appellants' argument is less than clear. According to appellants, "the essential issue that the court's finding appears to raise is whether the Meehls have standing under the FHA to challenge [the Neighbors'] discriminatory actions." But membership in a protected class is not a prerequisite for standing to assert a claim under the Fair Housing Act. Moreover, the trial court did not rule that any appellant lacked standing to assert such a claim.[4] We overrule appellants' fifth issue as it applies to Debra Meehl and the Foundation.

E. Merits of Fair Housing Act Claims
In their sixth and seventh issues, appellants challenge the trial court's finding that they failed to show that a federal Fair Housing Act ("FHA") discrimination had occurred or would occur as a result of the enforcement of the deed restriction. In support of this argument, appellants rely on sections 3604(f)(1), (2), and (3)(B) of the FHA, which make it unlawful:
(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of
(A) that buyer or renter,
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
(C) any person associated with that buyer or renter.
(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in *571 connection with such dwelling, because of a handicap of
(A) that person; or
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
(C) any person associated with that person.
(3) For purposes of this subsection, discrimination includes
(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling....
42 U.S.C.A. § 3604(f)(1), (2), & (3)(B). We note that these provisions do not apply to "rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence." Id. § 3603(b)(2). "`Family' includes a single individual." 42 U.S.C.A. § 3602(c). Here, it is undisputed that the Meehls' house is a single-family residence in which the Meehls reside, and that it is occupied or intended to be occupied by no more than four families living independently from one another. Thus, section 3604(f) does not apply to the Meehls' residence.
Although appellants cite no other provision of the FHA, they also rely on cases that apply section 3617, which provides:
It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.
42 U.S.C.A. § 3617; see, e.g., United States v. Wagner, 940 F.Supp. 972 (N.D.Tex.1996); Deep E. Tex. Reg'l. Mental Health & Mental Retardation Servs. v. Kinnear, 877 S.W.2d 550 (Tex.App.-Beaumont 1994), rev'd in part on other grounds by Kinnear v. Tex. Comm'n on Human Rights ex rel. Hale, 14 S.W.3d 299 (Tex. 2000) (per curiam). However, appellants provide no argument and cite no evidence indicating that the Neighbors have engaged in any prohibited conduct in connection with the exercise or enjoyment, by appellants or their prospective clients, of rights granted or protected by any of the four specified provisions of the FHA.
Section 3603(b)(2) exempts resident homeowners from the protections of all provisions of section 3604 with the exception of subsection (c). 42 U.S.C.A. § 3603(b)(2). Pursuant to subsection 3604(c), it is unlawful:
To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.
42 U.S.C.A. § 3604(c). Appellants, however, do not contend that the Neighbors caused any such statement to be made, printed, or published. Section 3605 applies to discrimination by those whose business includes residential real estate-related transactions (such as making or purchasing loans, selling, brokering, or appraising residential real property), and section 3606 applies to discrimination in the provision of brokerage services. 42 *572 U.S.C.A. §§ 3605, 3606. Appellants do not argue that these provisions apply to them.
Because appellants have failed to show that the Neighbors violated any applicable FHA provision, we overrule appellants' sixth and seventh issues.

F. Requests for Affirmative Relief
In their first and tenth issues, appellants challenge the trial court's denial of their requests for declaratory judgment and its refusal to permanently enjoin the Neighbors from attempting to enforce the deed's restrictive covenant to bar their operation of a community home. We review the grant or denial of declaratory judgment under the same standard that applies to other judgments. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (Vernon 2008). Although the trial court may refuse to render declaratory judgment if doing so would not terminate the uncertainty or controversy giving rise to the proceeding, id. § 37.008, that is not the case here. Inasmuch as appellants established as a matter of law that the restrictive covenant affecting the Meehls' residence does not bar the Foundation's operation of the planned community home, they have shown themselves entitled to a declaratory judgment to that effect.
The grant or refusal of a permanent or temporary injunction is ordinarily within the trial court's sound discretion, and on appeal, review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. Jim Rutherford Invs., Inc., 25 S.W.3d at 848. Here, the trial court's denial of the requested injunctive relief was based on the erroneous conclusions that the restrictive covenant is enforceable and the Community Homes Act does not apply. To enable the trial court to exercise its discretion in determining whether, under the correct law, injunctive relief is warranted, we sustain appellants' first and tenth issues in part and remand the case for consideration of injunctive relief. In light of our disposition of the appellants' first ten issues, appellants' eleventh issue is moot.

V. CONCLUSION
Because the trial court's rulings enforce a restrictive covenant in violation of the Community Homes Act, we dissolve the permanent injunction, reverse the trial court's judgment, and remand the case to allow the trial court to consider whether the injunctive relief against the Neighbors is warranted.
GUZMAN, J., concurring.
EVA M. GUZMAN, Justice, concurring.
Although I agree with the result reached by the majority, I respectfully disagree with its construction of section 123.003(b) to provide "that as of September 1, 1985, private covenants restricting the use of property as a community home are not enforceable." Ante, at 568. In addition, I disagree with the reasoning that "[a]lthough section 123.003(b) does not apply to bar enforcement of the restrictive covenant in this case, we must reconcile this section with the conflicting language of section 202.003(b) of the Texas Property Code." Id.
In 1985, the Legislature passed the Community Homes for Disabled Persons Act and provided that "[a] restriction, reservation, exception, or other provision in an instrument created or amended on or after September 1, 1985, that relates to the transfer, sale, lease, or use of property may not prohibit the use of the property as a community home." TEX. HUM. RES. CODE ANN. § 123.003 (Vernon 2001). The restrictive covenant at issue in this case was not "created or amended on or after September *573 1, 1985," and on its face, it does not "prohibit the use of the property as a community home." Thus, this statute does not apply to the restrictive covenant at issue.
In 1987, the Legislature added section 202.003 to the Property Code. This section provides that "[a] dedicatory instrument or restrictive covenant may not be construed to prevent the use of property as a family home [now referred to as a community home]." TEX. PROP. CODE ANN. § 202.003(b) (Vernon 2007). The covenant at issue in this case restricts the use of the property to a "single family residence," but the Neighbors are attempting to enforce it to prevent the use of the property as a community home. Unlike section 123.003(b) of the Human Resource Code, section 202.003 of the Property Code does apply, and it prevents the court from construing the covenant in the manner the Neighbors suggest.
There is no tension between the two statutes. The 1985 statute, enacted contemporaneously with the Community Homes for Disabled Persons Act, states in effect that private parties may not "opt out" of newly-enacted Act by creating or amending a restrictive covenant to prohibit the use of the property as a community home. It directs parties to refrain from drafting or amending a restrictive covenant in a particular way, and it is understandably prospective in its application because one could not draft a covenant "opting out" of the Community Homes for Disabled Persons Act before there was such an Act.
In contrast, the 1987 statute is directed at the behavior of courts. It does not address the way in which covenants written, but instead targets the way in which they are construed. In effect, it prevents courts from construing a covenant, regardless of its language or date of enactment, to prohibit the use of the property as a community home.
I therefore would conclude that section 202.003(b) of the Property Code applies and section 123.003(b) of the Human Resource Code does not; I also would not reconcile the two provisions because I do not believe they conflict. In all other respects, however, I join in the majority's analysis as well as its disposition of the issues.
NOTES
[1] Under section 123.003(b), a restrictive covenant cannot prevent the use of property as a family home. Although the Meehls seek to use their property as a community home, family home and community home are one in the same. When section 123.003(b) was enacted in 1987, the Community Homes Act defined a "family home" as follows:

"Family home" means a community-based residential home operated by:
(A) the department;
(B) a community center organized under Section 3.01, Texas Mental Health and Mental Retardation Act (Article 5547-203, Vernon's Texas Civil Statutes), which provides services to disabled persons;
(C) a nonprofit corporation; or
(D) an entity certified by the Texas Department of Human Resources as a provider under the intermediate care facilities for the mentally retarded program.
Act of May 15, 1985, 69th Leg., R.S., ch. 303, §§ 4, 5, 1985 Tex. Gen. Laws 1355, 1356. Curiously, such homes were referred to as "community homes" in the title of Act and as "family homes" in the body of Act. When the Act was recodified in 1991, this inconsistency was corrected, and the term "community home" replaced "family home" in the body of the Act. Compare id. with TEX. HUMAN RES. CODE ANN. § 123.004(1). Thus, the "family home" of 1987 is the "community home" of today; the definition of both terms includes "a community-based residential home" operated by one of four entities or types of entities.
[2] In its findings of fact and conclusions of law, the trial court erroneously concluded that the Community Homes Act "was enacted in 1991, four (4) years after section 202.002(a) of the Texas Property Code." The trial court then found that section 202.002 of the Property Code is irreconcilable with section 123.003 of the Human Resources Code because section 123.003 prevents owners from including a provision barring the use of property as a community home "on or after September 1, 1985," whereas section 202.002(b) prohibits enforcement of such covenants of any date. Relying on the Code Construction Act, the trial court concluded that the Community Homes Act "prevails" because it was enacted after the Property Code provision. See TEX. GOV'T CODE ANN. §§ 311.025(a), 311.031(d) (Vernon 2005). Noting that section 123.003(b) of the Community Homes Act does not address restrictive covenants created before September 1, 1985, the trial court reasoned that restrictive covenants created before that date are enforceable and further concluded that section 202.002(a) of the Property Code does not apply because it was not enacted until 1987. Thus, the trial court held that because the restrictive covenant in this case was created in 1965, it was enforceable to bar the use of the Meehls' property as a community home.

We disagree with the trial court's reasoning in at least three respects. First, it is based on a false premise. The Community Homes Act is the earlier statute; it was originally enacted in 1985 as Article 1011n of Vernon's Texas Civil Statutes and was simply recodified in 1991. See Act of May 15, 1985, 69th Leg., R.S., ch. 303, §§ 4, 5, 1985 Tex. Gen. Laws 1355, 1356, eff. September 1, 1985, repealed by Act of March 25, 1991, 72nd Leg., R.S., ch. 16, § 12.01(b), 1991 Tex. Gen. Laws 244, 336, eff. Aug. 26, 1991 ("Chapter 303, Acts of the 69th Legislature, Regular Session, 1985 (Article 1011n, Vernon's Texas Civil Statutes), is repealed.") and recodified by Act of March 25, 1991, 72nd Leg., R.S., ch. 16, § 12.01(a), 1991 Tex. Gen. Laws 244, 336, eff. Aug. 26, 1991. The recodifiying Act (S.B. No. 232) was intended to effect "nonsubstantive additions to and correction in enacted codes." Act of March 25, 1991, 72nd Leg., R.S., ch. 16, § 1.01, 1991 Tex. Gen. Law 244, 244-45. In contrast, section 202.002 chapter 202 of the Texas Property Code was enacted in 1987, two years after the Community Homes Act. Second, section 202.002 of the Property Code does not conflict with section 123.003 of the Human Resources Code, because the former expressly states that it "does not affect the requirements of the Community Homes for Disabled Persons Location Act," which had already been enacted. Both the legislative history and the plain text of the two provisions unambiguously require restrictive covenants to yield to the Community Homes Act. Third, the trial court failed to consider Property Code section 202.003(b), which governs a court's construction of a restrictive covenant that prevents the use of property as a family or community home. See TEX. PROP. CODE ANN. § 202.003(b).
[3] Debra Meehl testified that she and her husband, acting through the Foundation, planned to rent three suites in their home for periods of six to twelve months to persons with bipolar disorder who had been released from hospitalization but were not yet ready to rejoin their families. The Foundation would provide food, shelter, and supervision of the residents; assist them in improving their ability to perform life skills such as keeping appointments with doctors and managing money; provide opportunities for therapeutic activities such as gardening; and facilitate their reentry into life with their families. Debra explained that the Foundation would also host "family weekends," during which residents' family members would be allowed more extended visits.
[4] See id. §§ 3602(d) (defining "person" to include "corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, receivers, and fiduciaries"); 3602(i) (defining an "aggrieved person" as one who allegedly has been or will be injured by a discriminatory housing practice); 3613(a)(1)(A) (permitting an aggrieved person to file a civil action).