**Reversed and Remanded and Majority and Concurring Opinions filed June 21, 2012.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

————————————

## NO. 14-11-00576-CV

————————————

**CHANA HOROWITZ, Appellant**

**V.**

**FRANCISC BERGER; TIBERIU ROMAN; SARA BERGMAN; PINCHAS BERGMAN; ALEXANDER DAVIDOVICH; INNA DAVIDOVICH; ARON EHERENTREW; RONNIE EILAM; YITSHAK ELIYAHU; REVITAL ELIYAHU; ARNON EREZ; NETANEL FEIGER; NOAM FISHMAN; HADAS FISHMAN; FRANK FREEDLAND; GISA FREEDLAND; ISRAEL FREEDLAND; RIVKA FREEDLAND; SHMUEL FREEDLAND; TZIPORA FAIGE; TOVA SHNITMAN; NAFTALI FRIEDLANDER; MICHAEL GITIK; DANIEL GLINERT; D. GLINERT HOLDINGS, LTD.; SAGI GOLDBERG; MOSHE GOTLIB; YURAY GROSS; EVA GROSS; ARIE GUTTMAN; TZIPORA HELLMANM; HENRY KALB; MIRIAM RASKIN KIRYATI; BRURIA KLEIN; AVRAHAM KRAKOVER; SHULAMIT KRAKOVER; AHARON LAHER; SARA SHTERNA-LANDO; NIDA LAOHACHAI; MOSHE LAVI; MALKA LAVI; AMIR LEVI; SANDRA LEVI; RIVKA LIKVORNIK; ADINA MASTBAUM; MENAHEM NAGAR; GAVRIEL NESGI; NAHUM OLSCHWANG; MISHEL HAIM PAPISMEDOV; MOSHE PELEG; YOSSEF POTASH; YAAKOV RABINOVITS; AVRAHAM RAIZMAN; HADASA RAIZMAN; ELAD REGEV; BIEN SHAI; LIRON RUKACH; SHLOMIT SHAKED; IRIS SHANY; ELIEZER SPUND; MOSHE SPUND; YADIN TEREM; TZACHI NAIM; NIR VENTURA; DAN WILLNER; DGANIT WILLNER; ARIE CHAIM YOFFE; GAD ZEITLIN; RACHEL ZEITLINM; EZRA KAIM; DAN SCHWARZ; AND ZAHAVA SCHWARZ, Appellees**

## OPINION

In this interlocutory appeal, Chana Horowitz challenges the trial court's denial of her special appearance. We reverse and remand with instructions to the trial court to dismiss Horowitz from the suit for lack of personal jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Chana Horowitz is an Israeli citizen residing in Israel, where she worked as an independent contractor for the Israeli company, Founders T-M Real Estate & Investments, Ltd. ("Founders Israel"). Most of the seventy-two plaintiffs also are Israeli; none resides in the United States. The plaintiffs allege that Horowitz made representations to some of them in Israel[1] that persuaded them to purchase condominiums in a development referred to as "the Fairways Project" in League City, Texas from Roam Development Group, LP, a Texas limited partnership. Horowitz responded by filing a single document that included an unverified special appearance, a general denial, and a motion to dismiss for *forum non conveniens*. She subsequently served discovery requests to the plaintiffs and filed a motion to compel fuller responses to that discovery, and she later amended and verified her special appearance.

In the meantime, Founders Israel and two other defendants moved to compel the plaintiffs to arbitrate the claims against them. These defendants relied on an arbitration provision found in the Declaration of Condominium that applied to the property that the

---

[1] Other plaintiffs have no connection with Horowitz.

2

plaintiffs had purchased. Based on this motion, the plaintiffs argued that the trial court could exercise specific jurisdiction over Horowitz because she caused the plaintiffs to execute documents that incorporated the Declaration of Condominium.

Horowitz supported her amended special appearance with an affidavit in which she attested as follows:

- Horowitz is a citizen and resident of Israel.
- She worked as an independent contractor for Founders Israel from August 2002 through June 26, 2005.
- Under her contract with Founders Israel, she was required to follow its instructions. Founders Israel provided all sales tools, marketing materials, advertising, contracts, and other documents. She was not required to travel to Texas or perform any duties here.
- She has never lived, worked, contracted, owned property, or paid taxes in Texas.
- She has never maintained an office, address, telephone number, or bank account in Texas.
- In her individual capacity, Horowitz has never entered into a contract or conducted any business with a Texas business, citizen, or resident.
- She does not advertise or provide any services in Texas.
- She does not direct any mass mailings to Texas or have an ownership interest in any business located in Texas.
- She is not licensed or regulated by any Texas authority.
- She has never conducted any business in Texas or interacted with any of the plaintiffs in Texas.
- All of the contracts and documents she provided to the plaintiffs were prepared and provided by Founders Israel.
- All of her meetings and communications with the plaintiffs took place in Israel.
- She did not attend any of the property closings, all of which occurred after she stopped working for Founders Israel.
- Any payments by the plaintiffs would have been made to Founders Israel, who would then pay Horowitz and the other sales agents. Founders Israel paid her only in Israel.
- English is not Horowitz's native language and she never advised any of the plaintiffs that she was giving them a professional translation of any documents.

3

- It was not part of her job to train or advise other sales agents.
- As a reward for their services, Founders Israel sent Horowitz and other sales agents on a five-day trip to Las Vegas. On the way, the agents stopped in Texas for one-and-one-half days and viewed the Fairways Project, which is the property that is the subject of this suit.
- The only other time that Horowitz visited Texas was after she ceased working for Founders Israel in 2005.

The plaintiffs opposed Horowitz's special appearance and supported their opposition with affidavits in which they attested that they executed documents in English and in Hebrew; that English was not their native language; that Horowitz told them the English documents contained information similar to the information contained in the Hebrew documents; and that they never were given copies of the Declaration of Condominium.

Before any of Horowitz's other motions were heard, the trial court heard and denied her special appearance, concluding that Horowitz had sufficient contacts with Texas to support the exercise of specific personal jurisdiction. At Horowitz's request, the trial court also made findings of fact and conclusions of law in support of that ruling. In two appellate issues, Horowitz challenges the legal and factual sufficiency of the trial court's factual findings, and argues that the trial court erred in concluding that it properly could exercise specific jurisdiction over her.

## II. GOVERNING LAW

The Texas Supreme Court has interpreted the broad language of the Texas long-arm statute to extend Texas courts' exercise of personal jurisdiction "'as far as the federal constitutional requirements of due process will permit.'" *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Those requirements are fulfilled if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit

4

does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). Minimum contacts are sufficient to support the exercise of personal jurisdiction if they show that the nonresident defendant has purposefully availed herself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *See id.* at 319, 66 S. Ct. at 160; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). In determining whether the purposeful-availment requirement is satisfied, courts consider only the defendant's contacts with the forum state, and not the unilateral activity of a third party. *Michiana*, 168 S.W.3d at 785. The defendant's contacts with the forum state must be purposeful rather than merely fortuitous. *Id.* In addition, the defendant must seek some benefit, advantage, or profit by availing herself of the forum. *Id.*

Personal jurisdiction may be "general" or "specific." *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010). A trial court properly may exercise general jurisdiction over a defendant whose contacts with the forum state have been continuous and systematic. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *BMC Software*, 83 S.W.3d at 796. When general jurisdiction is at issue, only the defendant's pre-suit contacts are relevant. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 169 (Tex. 2007). On the other hand, when there is a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation, a trial court properly may exercise specific jurisdiction over the defendant. *Moki Mac*, 221 S.W.3d at 585.

A defendant challenging a Texas court's personal jurisdiction must negate all jurisdictional bases alleged. *BMC Software*, 83 S.W.3d at 793; *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 772 (Tex. 1995). Thus, the plaintiff has the initial burden of

pleading sufficient facts to bring the nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793; *Brocail v. Anderson*, 132 S.W.3d 552, 556 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). If the plaintiff fails to do so, then proof of the defendant's nonresidency is sufficient to negate personal jurisdiction. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658–59 (Tex. 2010). If the plaintiff does allege sufficient jurisdictional facts, then the defendant can defeat jurisdiction in several ways. The defendant can introduce evidence contradicting the plaintiff's factual allegations,[2] or show that the defendant's contacts with the forum state "fall short of purposeful availment";[3] or demonstrate that "traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction."[4] If specific jurisdiction is at issue, then the defendant also can show that the plaintiff's claims do not arise from the defendant's contacts with Texas.[5]

### III. STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a defendant is a question of law we review de novo. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 794. When, as here, the trial court issues findings of fact and conclusions of law in connection with its special-appearance ruling, the defendant may challenge the trial court's factual findings for legal and factual sufficiency. *BMC Software*, 83 S.W.3d at 794. On appeal, the scope of review includes all evidence in the record. *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99 (Tex. App.—Houston [14th Dist.] 1995, writ denied).

---

[2] *See Parker v. Robert Ryan Realtors, Inc.*, No. 14-10-00325-CV, 2010 WL 4226550, at *3 (Tex. App.—Houston [14th Dist.] Oct. 26, 2010, no pet.) (mem. op.) ("[B]oth parties can present evidence either proving or disproving the allegations.") (citing *Kelly*, 301 S.W.3d at 659).

[3] *Kelly*, 301 S.W.3d at 659.

[4] *Id.*

[5] *Id.*

6

We review the challenged factual findings by applying the same standards used in reviewing jury findings. *Wiese v. Pro Am Servs., Inc.*, 317 S.W.3d 857, 860 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). When reviewing for legal sufficiency, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* We will conclude that the evidence is legally insufficient to support the finding only if (a) there is a complete absence of evidence of a vital fact, (b) we are barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. In reviewing for factual sufficiency, we consider all of the evidence and will set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Meehl v. Wise*, 285 S.W.3d 561, 565 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)). We review the trial court's conclusions of law de novo. *Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 730 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

## IV. ABSENCE OF WAIVER

As a threshold matter, the plaintiffs contend that we must affirm the trial court's ruling because Horowitz waived her special appearance or entered a general appearance. The plaintiffs further point out that an appellant may not raise new arguments in a reply brief, and contend that because Horowitz failed to argue in her original appellate brief that she did *not* waive her special appearance, she subsequently could not challenge the

7

plaintiffs' assertion that she *did* waive her special appearance. We address each of these arguments in turn.

## A. Cure of Defective Special Appearance

The plaintiffs' waiver arguments focus on the chain of events that began when Horowitz initially filed her special appearance without including a verification as required by the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 120a. She instead filed a single unverified document that incorporated her special appearance, a general denial, and a motion to dismiss for *forum non conveniens*. She then set the special appearance and the motion to dismiss for hearing, and served the plaintiffs with requests for admission and interrogatories. Some of these requests and interrogatories are related to Horowitz's challenge to the trial court's exercise of personal jurisdiction over her, but other requests concern the merits of the plaintiffs' claims. Before the date set for the hearing on Horowitz's special appearance, the plaintiffs served answers to the discovery, and Horowitz filed a motion in which she asked the trial court to overrule the plaintiffs' objections, deem certain matters admitted, and compel the plaintiffs to respond more fully to her discovery requests. Finally, on the day originally set for the hearing on her special appearance, the plaintiffs filed a response and Horowitz filed an amended special appearance that was both verified and supported by her affidavit. The hearing was reset at the plaintiffs' request, and the plaintiffs filed a supplemental response in which they argued that (1) Horowitz waived her special appearance; and (2) in any event, she had sufficient minimum contacts to subject her to the trial court's jurisdiction.

We disagree with the plaintiffs' assertion that by this conduct, Horowitz waived her special appearance. By filing a verified amended special appearance before the hearing on the matter, Horowitz cured her initial failure to verify the special appearance. Rule 120a expressly provides that if a special appearance is filed, "*any* other plea, pleading, or motion may be contained in the same instrument or filed subsequent thereto without waiver of such special appearance; and may be amended to cure defects." TEX. R. CIV. P. 120a

8

(emphasis added). The plaintiffs' reading of the rule would make these two options mutually exclusive, because a defendant who filed any other pleading or motion with or after a special appearance would, in effect, have caused any defects in the special appearance to become incurable. We do not believe that Rule 120a will bear this construction. *See* TEX. R. CIV. P. 1 (requiring that the Rules of Civil Procedure "shall be given a liberal construction"); *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998) ("By 'cure,' the rule means to restore the special appearance. . . . An amendment that adds a verification cures the special appearance."). The amended special appearance relates back, curing and replacing the original special appearance. *See* TEX. R. CIV. P. 62 ("The object of an amendment . . . is to add something to, or withdraw something from, that which has been previously pleaded so as to perfect that which may be deficient . . . ."); TEX. R. CIV. P. 65 (explaining that, with limited exceptions inapplicable here, a substituted instrument takes the place of the original, and the original "shall no longer be regarded as part of the pleading in the record of the cause"). Thus, Rule 120a does not require a defendant to forego the filing of other pleadings and motions in order to preserve the right to cure a defective special appearance. *See Dennett v. First Cont'l Inv. Corp.*, 559 S.W.2d 384, 386 (Tex. Civ. App.—Dallas 1977, no writ) ("[I]n special appearances, . . . the crucial focus is on the allowance of amendment, and the timing of the amendment is not determinative.").

### B. Discovery and Related Dispute

Horowitz also did not waive her special appearance by serving the plaintiffs with discovery requests. "[T]he plain language of Rule 120a requires only that a special appearance be filed before any other 'plea, pleading or motion.'" *Exito Elecs. v. Trejo*, 142 S.W.3d 302, 305 (Tex. 2004) (per curiam) (explaining that a party does not waive a special appearance by first filing a Rule 11 agreement because the latter is not a "plea, pleading, or motion"). "Courts cannot ignore the plain meaning of the Texas Rules of Civil Procedure, which have the same effect as statutes, and must construe the rules to

9

ensure a fair and equitable adjudication of the rights of litigants." *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 297 (Tex. App.—Dallas 2009, no pet.)).[6] Interrogatories and requests for admission are not pleas, pleadings, or motions. *See Exito*, 142 S.W.3d at 305 n.11 (noting that the "pleadings" in a suit are the petition and answer, and a "motion" is an "'application requesting a court to make a specified rule or order'") (citing TEX. R. CIV. P. 45 and quoting BLACK'S LAW DICTIONARY 1031 (7th ed. 1999)).

Further, Horowitz did not waive her special appearance by filing a motion to compel discovery. By its express terms, the motion was made subject to Horowitz's special appearance and her motion to dismiss for *forum non conveniens*. *See Puri v. Mansukhani*, 973 S.W.2d 701, 707 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (holding that defendant did not waive his special appearance by filing a motion for new trial subject to the special appearance). The motion to compel was not heard or decided before the trial court heard and ruled on the special appearance. *Cf.* TEX. R. CIV. P. 120a(2) ("Any motion to challenge the jurisdiction provided for herein *shall be heard and determined* before a motion to transfer venue or any other plea or pleading *may be heard*.") (emphasis added); *Xenos Yuen v. Fisher*, 227 S.W.3d 193, 199 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that the defendant did not waive his special appearance by filing a motion for sanctions that was made "subject to" and in the alternative to his special appearance, and where the motion for sanctions was not heard or ruled upon).

---

[6] *Cf. Dawson-Austin*, 968 S.W.2d at 323. In that case, the court held that the defendant who filed a special appearance and a motion to quash and sought a continuance of the hearings on both matters did not waive her jurisdictional challenge. *Id.* at 323–24. The court explained that because the defendant requested a continuance of the hearing on the special appearance, she also had to request a continuance of the hearings on non-jurisdictional matters in order to stay within the requirement of Rule 120a(2) that jurisdictional challenges "shall be heard and determined before . . . any other plea or pleading may be heard." *Id.* at 323. The court distinguished the case that would have been presented if the defendant had sought and obtained a continuance of the special-appearance hearing in order to conduct non-jurisdictional discovery before the special appearance was decided. *Id.* The court noted that in such circumstances, it would be important that the defendant delayed conducting non-jurisdictional discovery until after the special appearance was decided. *Id.* Here, however, Horowitz did not require the court's intervention in order to take nonjurisdictional discovery. When she found the plaintiffs' answers to the discovery unsatisfactory, she filed a motion to compel, but the record does not show that she set the motion for hearing or submission or that the court ruled on it.

10

## C.     Absence of Briefing Waiver

Finally, the plaintiffs point out that they argued to the trial court that Horowitz had waived her special appearance, and they contend that we must affirm because, in her original appellate brief, Horowitz failed to challenge this alternative basis for the trial court's ruling.  Again, we disagree.  Although the plaintiffs argued in the trial court that there were several reasons to deny Horowitz's special appearance, we are not presented with a case in which the trial court failed to state the basis for its ruling or made findings that supported multiple theories.  To the contrary, the trial court expressly found that Horowitz had sufficient contacts to support its exercise of specific jurisdiction.  Thus, the trial court impliedly rejected the plaintiffs' alternative theories—including the argument that Horowitz waived her special appearance.  *See Knight Corp. v. Knight*, Nos. 14-11-00770-CV & 14-11-00994-CV, 2012 WL 1059389, at *2–3 (Tex. App.—Houston [14th Dist.] Mar. 29, 2012, orig. proceeding) (noting that there was no finding of waiver where the argument was raised in the trial court, but the trial court ruled on the special appearance on its merits).  Inasmuch as the trial court rejected the plaintiffs' contention that Horowitz waived her special appearance, she had no reason to revisit that argument on appeal.  *Compare* TEX. R. CIV. P. 299 ("The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact . . . .") *with Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988) (explaining that when there are favorable findings on alternative theories, the prevailing party may seek recovery under an alternative theory if the judgment is reversed on appeal).  We therefore may consider the merits of Horowitz's challenge to the trial court's findings of fact and conclusions of law.

## V.   FAILURE OF SPECIFIC JURISDICTION

The trial court made twenty-nine findings of fact, and although Horowitz challenges the sufficiency of the evidence to support some of the findings, she primarily argues that

the findings, even if true, are insufficient to support the trial court's exercise of specific jurisdiction.   We agree.

Seventeen of the factual findings concern representations that Horowitz allegedly made to some of the plaintiffs in Israel.[7]   But, jurisdiction cannot be sustained solely on the content of the nonresident's communications outside of the forum state.   *See Michiana*, 168 S.W.3d at 791 (observing that virtually all plaintiffs will allege that the communication was tortious and virtually all defendants will deny wrongdoing).   A conversation in another country about real property in the forum state is not itself a sufficient contact to support the forum state's exercise of specific jurisdiction over the speaker.   Moreover, Horowitz is not a party to any of the contracts that were the subject of the alleged misrepresentations, and neither Horowitz nor the plaintiffs with whom she spoke were Texas residents.   *See Peredo v. M. Holland Co.*, 310 S.W.3d 468, 474 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (reversing the denial of special appearance by a nonresident who responded to inquiries by Texas resident concerning contracts to which the nonresident was not a party).

One finding concerns only the contentions that other defendants in this case made in their motion to compel arbitration,[8] and in another finding, the trial court quoted "[t]he purported arbitration language relied on by other Defendants, which is contained in the Declaration of Condominium."[9]   But in determining whether Horowitz has purposefully availed herself of the privilege of conducting business in the forum state, only her own conduct matters.   *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (explaining that the purposeful-availment requirement ensures that a nonresident will not be haled into a foreign jurisdiction based on "'[t]he unilateral activity of those who claim some relationship'" with the defendant or as the

---

[7] These are findings (d)–(o), (q)–(s), (u), and (bb).

[8] Finding (w).

[9] Finding (x).

result of "'random,' 'fortuitous,' or 'attenuated' contacts." (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239–40, 2 L. Ed. 2d 1283 (1958))). Thus, language employed solely by other defendants cannot support the trial court's exercise of specific jurisdiction over Horowitz. Moreover, the other defendants' reliance on an arbitration clause is not an operative fact of the litigation. Jurisdiction cannot be based on contractual provisions that pertain only to the conduct and not to the substance of the litigation, and that do not demonstrate a tie between the nonresident defendant and the forum state. *Rush v. Savchuk*, 444 U.S. 320, 329, 100 S. Ct. 571, 578, 62 L. Ed. 2d 516 (1980); *Moki Mac*, 221 S.W.3d at 584.

Most of the trial court's remaining findings fall into even weaker versions of the two categories we have just discussed, i.e., those that concern Horowitz's role in persuading other nonresidents to execute sales documents in Israel for the purchase of Texas real estate from a third party; and those that concern the connection between those documents and an arbitration provision relied on by other defendants. None of them constitutes purposeful availment of the privilege of conducting activities in Texas.

The findings concerning Horowitz's role in the allegedly fraudulent transactions are as follows:

> (a) Horowitz, at the relevant time, was in the business of recruiting investors in Israel to invest in real estate in Texas and the United States, including the property that is the subject of this suit (the "Fairways Project").

> (b) Horowitz's actions were purposeful and taken with the goal in mind of recruiting Israeli investors to purchase real property in Galveston County, Texas, namely the Fairways Project.

> (c) Among these investors are several plaintiffs (her "Client Plaintiffs"). While she was employed by co-Defendant Founders T-M Real Estate and Investments, Ltd., she was a principal salesperson in Israel selling units in the Fairways Project.

13

. . .

(t)     She was instrumental in causing the sale documents to be executed by the Client Plaintiffs.

. . .

(aa)    Horowitz profited monetarily from defendants' real estate transactions with the Client Plaintiffs.

. . .

(cc)    Horowitz was an instrumental "but for" cause of the Client Plaintiffs executing the documents necessary to purchase units at the Fairways Project.

These are the kind of findings that might be relevant in addressing the merits of the plaintiffs' claims, but these facts, even if true,[10] are not contacts with Texas. As the Texas Supreme Court has explained, facts that might justify the imposition of liability do not substitute for facts necessary to establish jurisdiction. "The mere existence of a cause of action does not automatically satisfy jurisdictional due process concerns. A state is powerless to create jurisdiction over a nonresident by establishing a remedy for a private wrong and a mechanism to seek that relief." *Kelly*, 301 S.W.3d at 660. To the contrary, "jurisdictional analysis *always* centers on the defendant's actions and choices to enter the forum state and conduct business." *Id.* (emphasis added). In contrast, each of the findings cited above concerns Horowitz's business in Israel.

With one exception, the remaining findings appear intended to link Horowitz to an arbitration provision invoked by the other defendants in the suit. These are as follows:

(v)     The English sale documents incorporated by reference an arbitration provision, which other sales[-]agent defendants are now seeking to enforce.

. . .

(y)     Horowitz was the sales person and marketing agent who got the Customer Plaintiffs to execute the English language purchase agreement that

---

[10] There is no evidence, however, that Horowitz was "a principal salesperson."

14

contains reference to the above arbitration provision. Said arbitration provision requires arbitration of all claims against sales personnel and marketing agents in accordance with "American" Arbitration Association rules.

(z)    Horowitz procured an arbitration provision that contains language for her protection, as the principal sales and marketing agent for the Fairways Project.

It is undisputed that Horowitz did not prepare any of these documents, and was not a party to any of these agreements; thus, even if true, these findings would not support the exercise of personal jurisdiction in Texas because none constitutes a contact with Texas by Horowitz. *Id.*

Of the trial court's twenty-nine findings of fact, only a portion of the following finding is both a contact with Texas and supported by the record:

(p)    [Horowitz] visited the Fairways Project personally, and informed the Client Plaintiffs the same in an attempt to bolster her credibility when selling units in the Fairways Project.

In this statement, the trial court actually found two facts: first, that Horowitz visited the Fairways Project, and second, that in an effort to bolster her credibility, Horowitz told some of the plaintiffs that she had visited the project. The first took place in Texas, and it is a contact with the forum state; the second took place in Israel, and as with the trial court's other findings about Horowitz's alleged misrepresentations, it is not a contact with the forum state. It instead is simply a representation made in Israel by one resident of Israel to another resident of that country. Thus, we need concern ourselves only with the trial court's finding that Horowitz visited the Fairways Project.

We conclude, however, that Horowitz's visit to the Fairways Project is not a sufficient contact with Texas to support the trial court's exercise of specific jurisdiction. There is no substantial relationship between Horowitz's visit and the operative facts of the litigation. *See Moki Mac*, 221 S.W.3d at 558. The plaintiffs asserted claims against

15

Horowitz for (a) fraud, (b) fraud in a real estate transaction,[11] (c) violations of the Texas Theft Liability Act,[12] (d) breach of fiduciary duty, (e) negligent misrepresentation, (f) conversion, (g) conspiracy to defraud, (h) breach of warranty of title, (i) violations of the Texas Securities Act,[13] (j) violations of the Securities Exchange Act,[14] (k) unjust enrichment, (l) defalcation, and (m) civil racketeering. Each of their claims concerns statements that Horowitz allegedly made or failed to make to some of the plaintiffs. It is undisputed, however, that Horowitz interacted with the plaintiffs exclusively in Israel.

In concluding that these findings support the exercise of specific jurisdiction, the trial court seems to have relied on the fact that the plaintiffs have alleged fraud in a real estate transaction, and the real property at issue is located in Texas. *Cf. Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009) ("[T]he real property itself will also be an operative fact, or at the very least, will have a substantial connection to the operative facts. Without an asset, no fraudulent transfer can occur . . . ."). But unlike the nonresident defendant in *Retamco*, Horowitz never owned the Texas real estate at issue. *See also Michiana*, 168 S.W.3d at 787 ("It is true that in some circumstances a single *contract* may meet the purposeful-availment standard, but not when it involves a single *contact* taking place outside the forum state.").

Because the evidence fails to support the trial court's exercise of personal jurisdiction over Horowitz, we sustain the first issue presented for our review.

## VI. CONCLUSION

Having concluded that Horowitz lacks sufficient contacts with Texas to support the trial court's exercise of personal jurisdiction over her, we reverse the trial court's order denying her special appearance and remand the case to the trial court with instructions to

---

[11] *See* TEX. BUS. & COM. CODE ANN. § 27.01 (West 2009).

[12] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.003(a) (West 2011).

[13] TEX. REV. CIV. STAT. ANN. art. 581-1, *et seq.* (West 2010).

[14] Specifically, 15 U.S.C.A. § 78j(b) and 17 C.F.R. § 240.10b-5.

sever and dismiss the claims against her. *See Peredo*, 310 S.W.3d at 476 (when the minimum-contacts requirement has not been met, it is unnecessary to address the "fair play" portion of the due-process test).


/s/     Tracy Christopher
           Justice


Panel consists of Justices Frost, Brown, and Christopher. (Frost, J., concurring).