**Affirmed and Memorandum Opinion filed February 3, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00255-CV

---

## FJELL TECHNOLOGY GROUP AS F/K/A FJELL INDUSTRIES, AS AND SONJA VAN UDEN, Appellants

### V.

## UNITECH INTERNATIONAL, INC., Appellee/Cross-Appellant

### V.

## KRISTIAN KARLSEN, Cross-Appellee

---

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2012-13072**

---

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal and cross-appeal, we review the trial court's order granting in part and denying in part the special appearance filed by a Norwegian corporation and several of its current and former employees, none of

whom is a United States citizen or resides in the United States. We affirm.

## I.  BACKGROUND

This case arises from a dispute between a Texas corporation and a Norwegian corporation and several of the Norwegian corporation's employees. Appellee and cross-appellant Unitech International, Inc. is a Texas corporation with its principal place of business in Houston. Unitech develops, markets, and sells products for use in the oil and gas industry, focusing on the offshore and subsea segments of that industry. Unitech owns what it claims are trade secrets related to subsea oil and gas production. The alleged trade secrets are (1) a design for a hydraulic stab plate, and (2) a confidential list of customers and their contact information.

Appellant Fjell Technology Group AS, formerly known as Fjell Industries AS, is a Norwegian company with its principal place of business in Norway. Fjell designs and manufactures products for use in the oil and gas industry. Like Unitech, Fjell's business focuses primarily on the subsea and offshore segments of the oil and gas industry.

Appellant Sonja van Uden is a Dutch citizen living and working in Norway. In 2011, Fjell hired van Uden as its Business Development Manager. Prior to joining Fjell, van Uden was employed by Unitech Offshore AS, the Norwegian affiliate of Unitech.

Cross-appellee Kristian Karlsen is the General Manager of Fjell Subsea Products, a division of Fjell. Karlsen lives and works in Norway. Like van Uden, Karlsen worked for Unitech Offshore AS prior to his employment at Fjell.

In 2013, believing that its product designs and confidential customer list had been misappropriated, Unitech sued Fjell, van Uden, cross-appellee Karlsen, and

2

other defendants not party to these proceedings.[1] Fjell, van Uden, and Karlsen (collectively, the "Fjell Defendants") filed a special appearance challenging the trial court's exercise of jurisdiction over them. The trial court permitted extensive discovery regarding the jurisdictional issue and held an evidentiary hearing on the special appearance. Ultimately, the trial court granted the special appearance as to Karlsen and denied the special appearance as to Fjell and van Uden. The trial court did not specify the basis for its ruling and did not issue findings of fact and conclusions of law. Fjell and van Uden now appeal the trial court's order as it pertains to them. In a cross-appeal, Unitech appeals the trial court's order as it pertains to Karlsen.

We address Fjell and van Uden's appeal first. In doing so, we discuss the relevant legal principles, the parties' special-appearance burdens, the standard of review, and the scope of review. We conclude that Fjell and van Uden are amenable to specific jurisdiction in Texas. We then address Unitech's cross-appeal. We conclude that Karlsen is not amenable to jurisdiction in Texas.

## II.    ISSUES ON APPEAL

In five issues, Fjell and van Uden challenge the trial court's denial of their special appearance. In Issues One through Four, Fjell and van Uden claim that the trial court erred in finding specific and general jurisdiction as to each of them respectively. In Issue Five, they claim that the trial court's finding of jurisdiction violates traditional notions of fair play and substantial justice. We read these issues collectively as challenging the legal and factual sufficiency of the evidence to support the trial court's decision finding jurisdiction and denying the special

---

[1] Liv Onarheim and Roald Onarheim were also named defendants in Unitech's lawsuit and were parties to the special appearance. The trial court granted the special appearance as to the Onarheims. Unitech has not challenged that aspect of the trial court's order.

appearance as to Fjell and van Uden. *See I & JC Corp. v. Helen of Troy L.P.*, 164 S.W.3d 877, 882 (Tex. App.—El Paso 2005, pet. denied). We address the trial court's implied findings of fact and conclusions of law under the appropriate standard of review to the extent necessary to address the ultimate question of whether the trial court can exercise jurisdiction over Fjell and van Uden in this case. *See Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 840 n.3 (Tex. App.—Dallas 2014, no pet.).

### III. PERSONAL JURISDICTION – PRINCIPLES

Personal jurisdiction flows from the Due Process Clause of the Fourteenth Amendment and refers to the court's power to bind a particular person or party to a judgment. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moncrief Oil Int'l Inc. v. OAO Gazprom Exp., LLC*, 414 S.W.3d 142, 149 (Tex. 2013) (quoting *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex. 2007)).

Allegations that invoke the long-arm statute, however, do not necessarily satisfy constitutional due-process requirements. *Moncrief*, 414 S.W.3d at 149. "Asserting personal jurisdiction comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice." *Id.* at 150. A defendant establishes minimum contacts with a forum when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.*

4

A nonresident's contacts can give rise to general or specific personal jurisdiction. *Id.* General jurisdiction involves a court's ability to exercise jurisdiction over a nonresident's claim regardless of whether the claim is related to the defendant's contacts with the state. *PHC–Minden, L.P. v. Kimberly-Clark, Corp.,* 235 S.W.3d 163, 168 (Tex. 2007). General jurisdiction exists when the nonresident's contacts with the state are continuous and systematic. *Moncrief*, 414 S.W.3d at 150. In contrast, specific jurisdiction exists when the cause of action arises from or is related to the nonresident's purposeful activities in the state. *Id.* Specific jurisdiction focuses on the relationship between the defendant, Texas, and the litigation. *Id.* Here, Unitech asserted both specific and general jurisdiction as a basis for the trial court's exercise of personal jurisdiction over the Fjell Defendants.

## IV. SPECIAL APPEARANCE

A defendant can make a special appearance for the purpose of objecting to the court's jurisdiction over the defendant's person or property on the ground that the defendant or the defendant's property is not amenable to process in this state. Tex. R. Civ. P. 120a(1). Under the Texas long-arm statute, the plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction. *Moncrief*, 414 S.W.3d at 149. The Texas long-arm statute provides:

> [A] nonresident does business in this state if the nonresident:
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2008). Here, Unitech pleaded that the Fjell Defendants committed torts in Texas. Unitech met its initial burden of

alleging a cause of action sufficient to confer jurisdiction under the long-arm statute. *See Moncrief*, 414 S.W.3d at 149.

When the plaintiff's initial burden is met, the burden shifts to the defendant to negate all potential bases for personal jurisdiction. *Id.* Because Unitech alleged that the Fjell Defendants committed torts in Texas, the Fjell Defendants had to negate that basis. *See id.* at 149–50. The nonresident defendant can negate jurisdiction on either a factual or a legal basis. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). To negate jurisdiction on a factual basis, the nonresident defendant can disprove the plaintiff's allegations by presenting evidence that it has no contacts with Texas. *Id.* The plaintiff can respond with its own evidence affirming the allegations and risks dismissal if it cannot present the trial court with evidence establishing jurisdiction. *Id.*

To negate jurisdiction on a legal basis, the nonresident defendant can show that the evidence is legally insufficient to establish jurisdiction even if the plaintiff's allegations are true. *Id.* For example, the defendant can show that its contacts with Texas fall short of purposeful availment, that the plaintiff's claims do not arise from or relate to the contacts, or that exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Id.*

Here, neither party argues that the other failed in its burden to present the trial court with evidence affirming or negating Unitech's jurisdictional allegations. The trial court permitted discovery on the jurisdiction issue, and both parties presented the court with extensive written and testimonial evidence in support of their respective positions. The parties' issues on appeal and cross-appeal challenge the legal and factual sufficiency of the evidence supporting the trial court's conclusions that (1) Fjell and van Uden are amenable to jurisdiction in Texas and (2) Karlsen is not.

## V. STANDARD OF REVIEW

Whether the trial court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief*, 414 S.W.3d at 150. However, the trial court frequently must resolve questions of fact before deciding the jurisdictional question. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Id.* at 795. Because the appellate record in this case includes the reporter's and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.*

We review challenged factual findings by applying the same standards used in reviewing jury findings. *Wash. DC Party Shuttle, LLC v. IGuide Tours, LLC*, 406 S.W.3d 723, 729 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc). A legal sufficiency challenge will be sustained when the record discloses one of the following situations: (a) a complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence conclusively establishes the opposite of the vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014). In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the judgment, crediting evidence that a reasonable fact finder could have considered favorable and disregarding unfavorable evidence unless the reasonable fact finder could not. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014). We must indulge every reasonable inference that supports the trial court's findings. *Id.* We cannot

7

substitute our opinion on witness credibility for that of the fact finder. *City of Keller v. Wilson*, 168 S.W.3d 802, 816–17 (Tex. 2005). Nor can we disregard conclusive evidence that is contrary to a verdict. *Id.* at 817. A legal-sufficiency challenge fails if more than a scintilla of evidence supports the factual finding. *BMC Software*, 83 S.W.3d at 795.

A factual sufficiency challenge will be sustained if the trial court's findings are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). In conducting a factual sufficiency review, we must consider all of the evidence in the record. *Id.* Because "[t]he factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony[,]" *IGuide Tours*, 406 S.W.3d at 729, we cannot substitute our own judgment for that of the factfinder, even if we would reach a different answer on the evidence. *GTE Mobilnet of S. Tex. L.P. v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The amount of evidence necessary to affirm the factfinder's judgment is far less than that necessary to reverse its judgment. *Id.*

To the extent the underlying jurisdictional facts are undisputed, we conduct a de novo review. *Markette v. X-Ray X-Press Corp.*, 240 S.W.3d 464, 466 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

## VI.   SCOPE OF REVIEW

Trial courts determine a special appearance on the basis of the pleadings, the parties' stipulations, affidavits, the results of discovery, and oral testimony. Tex. R. Civ. P. 120a(3); *Camac v. Dontos*, 390 S.W.3d 398, 405 (Tex. App.—Dallas 2012, no pet.). On appeal, the scope of review in a special appearance case includes all evidence in the record. *Horowitz v. Berger*, 377 S.W.3d 115, 122 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

8

## VII.  DISCUSSION

### A.    Jurisdictional Evidence

We first review the relevant jurisdictional evidence to give appropriate deference to the trial court's implied findings.

The parties do not dispute the following facts:

- The Fjell Defendants are not Texas residents.

- In 2011 and 2012, Van Uden sent, on behalf of Fjell, a series of emails to individuals in Texas. Some of the emails were sent to specific individuals, and some of the emails were in the form of news letters sent to a large number of recipients, some of whom were located in Texas.

- The emails contained Fjell marketing materials.

- The emails were marketing Fjell's new subsea products, which are at the core of the dispute between the Fjell Defendants and Unitech.

- The emails contained statements indicating that Fjell desired to become a parts supplier to the recipients' respective companies.

- In 2009, while working for Unitech Offshore AS, van Uden traveled to Houston, Texas, and worked in Unitech's Houston offices.

- While working in Unitech's Houston offices, van Uden had access to Unitech's confidential customer list.[2]

The parties dispute two factual matters. First, the parties dispute the nature of the relationship between Fjell, van Uden, and two Texas-based Unitech employees, Chris Kutach and Jason Pennington. Kutach testified at the special-appearance hearing. He acknowledged that he was in contact with Van Uden. They

_____

[2] In her deposition testimony, van Uden acknowledged having access to Unitech's customer information but denied knowing that the contact information was a confidential trade secret. As we discuss below, van Uden's position relates to the merits of Unitech's claims and is therefore beyond the scope of our jurisdictional analysis.

communicated via email and Skype. Additionally, Kutach and Pennington met with van Uden in Paris. Kutach and van Uden deny that their meetings and correspondence had anything to do with Fjell establishing a foothold in the Texas oil and gas market. Rather, their position is that Kutach and Pennington were trying to start a business and van Uden was offering friendly moral support and general business advice. However, John Hanna, Unitech's financial controller, testified by affidavit regarding two conversations he had with Kutach.[3] According to Hanna, Kutach stated that he and Pennington were working with Fjell to start a business and that Fjell wanted to establish a location in Houston.

Second, the parties dispute whether Fjell actually obtained a purchase order from Cameron, a company headquartered in Texas. According to Hanna, Kutach stated that Fjell had obtained a purchase order from Cameron. Van Uden and Gunnar Madsen, Fjell's chief executive, confirmed that Fjell sold products to Cameron; however, Madsen and van Uden claimed that the products were sold to one of Cameron's German subsidiaries and not to Cameron in Houston.

It was within the purview of the trial court to resolve the conflicts in the evidence. The evidence in the record is legally and factually sufficient to support the following implied findings with regard to the disputed evidence: (1) Van Uden met with Kutach and Pennington to discuss a joint business venture between Kutach and Pennington and Fjell, the purpose of which was to establish a Fjell

---

[3] Fjell and van Uden argue that we should disregard Hanna's affidavit because it was not made on personal knowledge and was based on hearsay. Fjell and van Uden did not object to Hanna's affidavit regarding personal knowledge and did not secure a ruling on their objection to Hanna's affidavit regarding hearsay. Therefore, they waived these objections. *See La China v. Woodlands Op. Co.*, 417 S.W.3d 516, 521 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (finding waiver when party did not secure a ruling on objections to an affidavit regarding personal knowledge and hearsay); *IGuide Tours*, 406 S.W.3d at 736 ("[A] litigant must object and obtain a ruling from the trial court to preserve a complaint that an affidavit fails to reveal the basis for the affiant's personal knowledge of the facts stated therein.").

location in Houston; and (2) Fjell obtained a purchase order from Cameron, a company based in Houston, Texas.

The question remains whether the undisputed evidence and the trial court's implied findings support the court's legal conclusion that Fjell and van Uden are subject to jurisdiction in Texas.

## B.    Specific Jurisdiction

We begin by analyzing specific jurisdiction. Specific jurisdiction minimum contacts are present if (1) the nonresident defendant has purposefully availed himself of the privilege of conducting activities in the forum state, and (2) the cause of action arises from or relates to those contacts. *Moki Mac,* 221 S.W.3d at 576.

We first address van Uden's attempt to invoke the fiduciary-shield doctrine. Citing *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982), van Uden contends that a nonresident employee of a foreign corporation cannot be sued in Texas simply because his or her employer solicits business in Texas. She posits that Unitech's claim that she conducted a specific act in Texas "in her personal capacity" is not viable when she merely sent a handful of emails to Texas in her capacity as Fjell's employee. A corporate employee "is not shielded from the exercise of *specific* jurisdiction as to torts for which the . . . employee may be held individually liable." *SITQ E.U., Inc. v. Reata Rests., Inc.*, 111 S.W.3d 638, 651 (Tex. App.—Fort Worth 2003, pet. denied). In *Siskind*, the Texas Supreme Court held that exercising personal jurisdiction over individual defendants would violate due process when the plaintiff failed to allege any specific acts in Texas attributable to the individual defendants. 642 S.W.2d at 438. Here, in contrast, Unitech has alleged torts for which van Uden can be held individually liable. *See Shapolsky v. Brewton*, 56 S.W.3d 120, 133 (Tex. App.—Houston [14th Dist.]

11

2001, pet. denied) ("[C]orporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation."). We therefore reject van Uden's argument that she is entitled to protection from jurisdiction simply because her alleged acts were allegedly done in a corporate capacity. *See Davis Invs., VI, LP v. Holtgraves*, No. 14-08-00222-CV, 2009 WL 975961, at \*12 (Tex. App.—Houston [14th Dist.] Feb. 26, 2009, pet. denied) (mem. op.).

We further note that "[t]he Texas contacts of agents or employees are attributable to their nonresident principals." *Huynh v. Nguyen*, 180 S.W.3d 608, 620 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Fjell does not dispute that van Uden was acting as its agent when she sent emails to individuals in Texas for the purpose of marketing Fjell's products. Nor does Fjell dispute that van Uden was acting in her capacity as Fjell's agent when she met with Kutach and Pennington about business opportunities in Texas. Therefore, van Uden's Texas contacts, which were made in her capacity as Fjell's agent, are attributable to Fjell.

We now turn to the purposeful-availment analysis.

### 1.    Purposeful Availment

"[T]he purposeful availment analysis seeks to determine whether a nonresident's conduct and connection to a forum are such that it could anticipate being haled into a court there." *Moncrief*, 414 S.W.3d at 152. The nonresident defendant must take action that is purposefully directed at the forum state. *Moki Mac*, 221 S.W.3d at 577. To determine whether the nonresident defendant purposefully directed action toward Texas, we can look at the nonresident defendant's conduct indicating an intent or purpose to serve the Texas market. *Id.* We consider three factors to determine whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas. *Moncrief*, 414 S.W.3d at 151. First, we consider only the specific defendant's contacts with the forum; the

12

unilateral activity of another party or a third person is not relevant. *Id.* Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Id.* Third, the nonresident defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* In this analysis, we do not assess the quantity of the contacts, but rather their nature and quality. *Id.* The nonresident's activities, whether they consist of direct acts within Texas or conduct outside of Texas, must justify a finding that the defendant could reasonably anticipate being called into a Texas court. *BMC Software*, 83 S.W.3d at 798.

Specific jurisdiction must be assessed on a claim-by-claim basis unless all of the plaintiff's claims arise from the same forum contacts. *Moncrief,* 414 S.W.3d at 150. Here, all of Unitech's claims arise from the same forum contacts—namely, van Uden's 2009 trip to Texas; van Uden's and Fjell's marketing emails sent to individuals in Texas; van Uden's meetings, on behalf of Fjell, with Unitech's Texas employees; and the sale of Fjell's products to a Texas-based company.

The trial court reasonably could have concluded that Fjell and van Uden's contacts were purposeful, and not random or fortuitous. Unlike the plaintiff in *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 794 (Tex. 2005), Fjell and van Uden were not unilaterally haled into forming contacts with Texas. To the contrary, they initiated contact with Texas by sending marketing emails to individuals in Texas and by communicating—via Skype, email, and in-person meetings—with Unitech's Texas-based employees.

The trial court reasonably could have concluded that Fjell and van Uden sought to profit and did profit by availing themselves of the jurisdiction. They sought to profit when they sent mails into Texas for the express purpose of becoming a supplier to Texas-based companies. *See Michiana*, 168 S.W.3d at 785 ("[A] nonresident that directs marketing efforts to Texas in the hope of soliciting

13

sales is subject to suit here in disputes arising from that business."). They did profit when they garnered a purchase order from a Texas-based company.

From the preceding findings, the trial court reasonably could have found that it was foreseeable that any disputes deriving from van Uden's and Fjell's contacts with Texas might be heard by a Texas court. *See Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 849 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's conclusion that Fjell and van Uden purposefully availed themselves of jurisdiction in Texas.

In so holding, we reject Fjell and van Uden's argument that their intent in sending the emails was not to target the Texas market, but rather the world market. A nonresident defendant's subjective intent in reaching out to individuals in Texas is irrelevant. *See Moncrief*, 414 S.W.3d at 154. At the jurisdictional phase, we examine business contacts, not what the parties thought or intended, which is the role of the factfinder in assessing the merits of the claims alleged. *Id.*

We also reject Fjell and van Uden's argument that the evidence is insufficient to prove they committed the torts alleged by Unitech. This argument relates to the merits of Unitech's claims—i.e., whether Fjell and van Uden actually committed the alleged torts. We cannot consider the merits of Unitech's claims at the jurisdiction stage. *See Moncrief*, 414 S.W.3d at 156 n.15; *Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). We can look only to Fjell and van Uden's business contacts with the forum to determine whether jurisdiction exists. *See Moncrief*, 414 S.W.3d at 151.

14

## 2. Substantial Connection between Forum Contacts and Operative Facts

To support the exercise of specific jurisdiction, the plaintiff's causes of action must arise from or relate to the nonresident defendant's forum contacts. *Moki Mac,* 221 S.W.3d at 576. This means that a substantial connection must exist between the nonresident defendant's forum contacts and the operative facts of the litigation. *Id.* at 585. The "operative facts" of the litigation are those facts the trial court will focus on to prove the nonresident defendant's liability. *Kaye/Bassman Int'l Corp. v. Dhanuka*, 418 S.W.3d 352, 357 (Tex. App.—Dallas 2013, no pet.); *Pulmosan*, 273 S.W.3d at 839. "But for causation" alone is not sufficient to establish the requisite connection between the forum contacts and the operative facts of the litigation. *Moncrief*, 414 S.W.3d at 157 (discussing *Moki Mac*, in which the nonresident defendant's marketing efforts in Texas were unrelated to the negligence that occurred in another state). Whether a plaintiff's claims arise from or relate to the nonresident defendant's Texas contacts is a question of law unaffected by the operation of implied findings of relevant fact necessary to support the special appearance ruling. *Id.* at 150 n.4.

Here, Unitech alleged eight causes of action against Fjell and van Uden: (1) civil conspiracy,[4] (2) knowing and intentional participation in a breach of fiduciary duty, (3) violations of the Texas Theft Liability Act, (4) conversion, (5) unfair competition, (6) common-law misappropriation, (7) tortious interference with existing and prospective business relationships, and (8) business disparagement.

---

[4] Civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995). Civil conspiracy is regarded as a derivative tort because a defendant's liability for conspiracy depends on its participation in an underlying tort. *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Personal jurisdiction over a nonresident defendant cannot be based solely upon the effects or consequences of an alleged civil conspiracy. *Gibson*, 897 S.W.2d at 773. Thus, our jurisdictional analysis will focus on the underlying torts.

Our analysis of each of these claims under the relatedness prong differs slightly. We examine the Texas Theft Liability Act, unfair competition, conversion, and misappropriation claims together because they have similar operative facts. We then individually examine the breach-of-fiduciary-duty, business-disparagement, and tortious-interference claims.

### a. Trade-Secret and Confidential-Information Claims

Fjell's and van Uden's forum contacts are substantially related to the operative facts of Unitech's Texas Theft Liability Act,[5] conversion,[6] unfair competition,[7] and misappropriation claims.[8] Each of these claims shares common operative facts because liability for each rests on whether the defendant wrongfully acquired, used, or transmitted the plaintiff's property—in this case, the alleged trade secrets and confidential information.

The primary focus at trial will be on (1) the similarities between the products being marketed by Fjell in Texas and Unitech's own product designs and (2) the similarities between the contact information of the recipients of van Uden's marketing emails and the contact information in Unitech's customer list. Fjell's

---

[5] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.002(2), 134.003 (West 2011); Tex. Penal Code Ann. § 31.03(a), (b)(1) (West Supp. 2014), § 31.05(a), (b) (West 2011).

[6] *See Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 447 (Tex. 1971) (defining conversion); *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.) (elements of conversion); *see also Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 763 (Tex. App.—Texarkana 1996) (recognizing conversion claim involving confidential customer list), *rev'd in part on other grounds*, 939 S.W.2d 146 (Tex. 1997); *Chandler v. Mastercraft Dental Corp.*, 739 S.W.2d 460, 469 (Tex. App.—Fort Worth 1987, writ denied) (recognizing conversion claim involving trade secrets).

[7] *BP Automotive, L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 571–72 (Tex. App.—Houston [1st Dist.] 2014, no pet. h.) (elements of unfair competition by misappropriation).

[8] *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied) (elements of misappropriation).

and van Uden's liability, if any, arises from and relates to their contacts with Texas because (1) the alleged email transmission of Unitech's alleged trade secrets to individuals in Texas and (2) the use of Unitech's confidential customer lists in sending the emails, all of which allegedly caused Unitech to suffer economic harm, are at the core of Unitech's trade-secret theft claims.

### b.      *Breach of Fiduciary Duty*

Fjell's and van Uden's forum contacts are substantially related to the operative facts of Unitech's breach-of-fiduciary-duty claim. The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied). The primary focus at trial will be on Fjell's and van Uden's acts that allegedly induced Unitech's Texas-based employees—for example, Kutach and Pennington—to breach their fiduciary duties. Fjell's and van Uden's liability, if any, arises from and relates to their contacts with Texas because the adverse effect of Fjell and van Uden's interactions with Unitech's Texas-based employees are at the core of Unitech's breach-of-fiduciary-duty claims.

### c.      *Business Disparagement*

Fjell's and van Uden's forum contacts are substantially related to the operative facts of Unitech's business-disparagement claim. The general elements of a claim for business disparagement are: (1) publication by the defendant of the disparaging words or information, (2) falsity, (3) malice, (4) lack of privilege, and (5) special damages. *Waste Mgmt.*, 434 S.W.3d at 155. The primary focus at trial will be on the allegedly defamatory nature of statements made by Fjell and van Uden in their communications to individuals in Texas. Fjell's and van Uden's

17

liability, if any, arises from and relates to their contacts with Texas because the content and allegedly harmful nature of Fjell's and van Uden's marketing emails and other in-person contacts are at the core of Unitech's business disparagement claims.

### d. Tortious Interference with Current and Prospective Business Relations

Fjell's and van Uden's contacts are substantially related to Unitech's claim for tortious interference with current and prospective business relations. The elements of tortious interference with prospective business relations are: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). The elements of tortious interference with existing business relationships are: (1) unlawful actions undertaken by the defendant without a legal right or justifiable excuse; (2) with the intent to harm a party to the relationship; and (3) actual harm or damage. *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 335 (Tex. App.—Houston [14th Dist.] 1991, no writ). The primary focus at trial will be on whether the recipients of Fjell's marketing emails were existing or potential business relations of Unitech. Fjell's and van Uden's liability, if any, arises directly from and relates to their contacts with Texas because the individual email recipients' status as current or potential business relations of Unitech and the adverse effect of Fjell's and van Uden's emails on those business relations are at the core of Unitech's claims.

18

We conclude that a substantial connection exists between Fjell and van Uden's forum contacts and the operative facts of the litigation.

Fjell and van Uden purposefully availed themselves of the forum, and there is a substantial connection between their forum contacts and the operative facts of the litigation. The trial court did not err when it concluded that Fjell and van Uden have minimum contacts with Texas sufficient to allow the exercise of specific jurisdiction over them. We next determine whether the exercise of personal jurisdiction over Fjell and van Uden offends traditional notions of fair play and substantial justice.

### 3. Fair Play and Substantial Justice

A court considers whether the exercise of jurisdiction offends traditional notions of fair play and substantial justice only if minimum contacts are established. *See Peredo v. M. Holland Co.*, 310 S.W.3d 468, 476 (Tex. App.— Houston [14th Dist.] 2010, no pet.). If a nonresident has minimum contacts with the state, then the exercise of jurisdiction over the nonresident will rarely offend traditional notions of fair play and substantial justice. *Moncrief,* 414 S.W.3d at 154–55. Courts evaluating whether exercising jurisdiction offends traditional notions of fair play and substantial justice should consider the following factors, when appropriate:

- the burden on the defendant;
- the interests of the forum in adjudicating the dispute;
- the plaintiff's interest in obtaining convenient and effective relief;
- the international judicial system's interest in obtaining the most efficient resolution of controversies; and
- the shared interest of the several nations in furthering fundamental substantive social policies.

19

*Id.* at 155. The defendant must present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 879 (Tex. 2010).

Asserting personal jurisdiction over Fjell and van Uden would not offend traditional notions of fair play and substantial justice. Fjell and van Uden contend that they do not reside in the United States and do not have agents, property, or business in Texas. They argue that travelling to Texas for a trial would be inconvenient and would detrimentally affect their productivity. This, they claim, is the definition of burdensome. Although subjecting Fjell and van Uden to suit in Texas certainly imposes a burden on them, the same can be said of all nonresidents. However, "[d]istance alone cannot ordinarily defeat jurisdiction." *Moncrief*, 414 S.W.3d at 155; *see also Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991) ("[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985))).

The burden imposed on Fjell and van Uden is mitigated by the convenience to Unitech, a Texas resident, of litigating in the forum where the alleged torts occurred. *See Moncrief*, 414 S.W.3d at 155. Additionally, contrary to Fjell and van Uden's position that Texas has little interest in adjudicating this dispute, the allegations that Fjell and van Uden committed torts in Texas against a resident implicate a serious state interest in adjudicating the dispute. *See id.* Moreover, because the parties have already conducted extensive discovery in this case and the trial court is familiar with the case, it promotes judicial economy to litigate Unitech's claims in Texas. *See id.* Finally, no other jurisdiction has as significant an interest as Texas does in resolving a claim for torts committed in Texas against

a Texas resident. *See id.* at 156.

On balance, this is not one of the rare cases where exercising jurisdiction does not comport with fair play and substantial justice. *Cf. Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 114–16 (1987) (exercising jurisdiction was not fair when the only remaining claim was one for indemnification by a Taiwanese corporation against a Japanese corporation); *Guardian Royal*, 815 S.W.2d at 233 (exercising jurisdiction was not fair when, in a suit between insurers, the decedent's family and the original defendant had no interest in the outcome and the insurers were not Texas consumers or insureds); *Juarez v. United Parcel Serv. de Mexico S.A. de C.V.*, 933 S.W.2d 281, 285 (Tex. App.—Corpus Christi 1996, no writ) (exercising jurisdiction was not fair when the dispute was between Mexican citizens and arose out of an incident that occurred in Mexico with no ties to Texas or its residents). We conclude that exercising personal jurisdiction over Fjell and van Uden would not offend traditional notions of fair play and substantial justice.

The trial court did not err when it determined that it has specific jurisdiction over Fjell and van Uden. Therefore, we do not address whether Fjell and van Uden are subject to general jurisdiction. Tex. R. App. P. 47.1. We overrule Fjell and van Uden's issues on appeal.

## VIII. Unitech's Cross-Appeal

In its cross-appeal, Unitech challenges the trial court's granting of Karlsen's special appearance. Unitech contends Karlsen is subject to jurisdiction in Texas because he (1) supervised Fjell's marketing activities in Texas, (2) was copied on van Uden's emails to individuals in Texas, and (3) assisted van Uden in deciding where to send the emails. We interpret Unitech's appeal as challenging the legal and factual sufficiency of the evidence supporting the trial court's legal conclusion

21

that Karlsen was not amenable to jurisdiction in Texas.

When conducting a purposeful availment analysis, we can consider only the specific defendant's contacts with the forum. *Moncrief*, 414 S.W.3d at 151. Here, Karlsen's only forum contact is a trip he took to Houston to attend the 2013 Offshore Technology Conference, which occurred after Unitech filed its lawsuit. Unitech has not alleged that any of the alleged torts committed by the Fjell Defendants occurred during the 2013 conference.

The record contains no evidence that Karlsen sent any emails to individuals in Texas. Although the evidence does demonstrate that Karlsen was a carbon-copy recipient of van Uden's marketing emails, the unilateral activity of another party or a third person is not relevant to our jurisdictional analysis as it pertains to Karlsen individually. *See id.*[9] Furthermore, Unitech acknowledged during the special appearance hearing that it did not produce evidence of Karlsen reaching into the state of Texas:

> THE COURT: Did he send any emails?
>
> [UNITECH]: No. There's - - we don't have an e-mail that he sent.
>
> THE COURT: Did he make any sales calls?
>
> [UNITECH]: The e-mails from Ms. Van Uden suggests that he and Van Uden will be in Houston to meet with each of our customers?
>
> THE COURT: That's her - -
>
> [UNITECH]: I don't have his presence in the state of Texas to meet with any of our customers.

The record lacks any evidence that Karlsen purposefully availed himself of jurisdiction in Texas. Additionally, the record contains no evidence that Karlsen's single post-lawsuit contact with Texas was continuous and systematic so as to

---

[9] Unitech has not cited, and we have not found, any legal authority supporting its position that Employee A's forum contacts can be attributed to Employee B merely because Employee B is Employee A's supervisor.

justify the exercise of general jurisdiction over him. We hold that the evidence was legally and factually sufficient to support the trial court's conclusion that Karlsen lacked sufficient minimum contacts with Texas to allow the exercise of either general or specific jurisdiction over him. We overrule Unitech's issue on cross-appeal.

## IX.  Conclusion

We affirm the trial court's order granting the special appearance as to Karlsen and denying the special appearance as to Fjell and van Uden.


/s/    Marc W. Brown
       Justice

Panel consists of Justices McCally, Brown, and Wise.